

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 FEB 22  A 11: 30

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

Rod J. Rosenstein
United States Attorney

Mushtaq Z. Gunja
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

410-209-4800
TTY/TDD:410-962-4462
410-209-4988
FAX 410-962-3091
Mushtaq.Gunja@usdoj.gov

January 6, 2009

Nicholas Vitek, Esquire
401 East Pratt Street
Suite 1800
Baltimore, Maryland 21202

      Re:   *United States v. Ketankumar Patel and Deepa, Inc.*
             Criminal No. JFM-09-0351

Dear Mr. Vitek:

      This letter and the Sealed Addendum confirm the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 19, 2010, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

      1.    The Defendant, Ketankumar Patel [hereinafter "the Defendant"] agrees to plead guilty to Count One of the Superceding Indictment in which he is charged with conspiracy to distribute and possess with intent to distribute oxycodone in violation of 21 U.S.C. §846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

          a.    That the Defendant did combine, conspire, confederate and agree with others to distribute oxycodone;

          b.    That the Defendant did so knowingly and willfully;

November 2006

   c. That the conspiracy occurred in the District of Maryland.

## Penalties

  3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a sentence of twenty years imprisonment without parole, a fine of one million dollars, and at least three years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.[1] If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

  4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### "C" Plea: Advisory Sentencing Guidelines Apply

5.     The parties stipulate and agree pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure the sentence outlined in paragraph 11 is an appropriate disposition of the case. The Defendant understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.

### Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the following statement of facts which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Statement of Facts

From at least July 2007 through June 2009, the Defendant, Ketankumar Patel, did knowingly and wilfully combine, conspire, confederate and agree with others known and unknown to knowingly, intentionally and unlawfully distribute a mixture or substance, which contains

3

oxycodone, also known as OxyContin and Percocet, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Specifically, in March 2009, a confidential informant came forward to the Drug Enforcement Administration and stated that he had been purchasing prescription Oxycontin and Percocets from Ketankumar Patel's Medicine Shoppe pharmacy in Reisterstown, Maryland. This informant told the DEA that he had obtained a blank prescription pad, and would fill out multiple false prescriptions in different names for Oxycontin and Percocets. Patel filled the first prescription in July 2007, and sold the informant (who was not an informant at the time, but merely a drug dealer) sixty 80 mg Oxycontin pills for just over $500.

Patel filled approximately 10 more prescriptions for the informant over the course of 2007, though the price of the pills fluctuated between $8 and $12 per 80 mg Oxycontin pill over the course of the calendar year. Mr. Patel's illicit drug distribution continued in full force in 2008 - over the course of that year, Patel filled approximately 410 prescriptions for the informant with the price Patel charged the informant remaining approximately $12 per 80 mg Oxycontin pill, and $2 per 10 mg Percocet pill. Mr. Patel continued to fill prescriptions for the informant through March 2009, filling almost 200 more prescriptions for the informant in the first three months of 2009.

After coming forward to the DEA in March 2009, DEA had the informant tape-record several interactions with Mr. Patel. On March 26, 2009, Mr. Patel filled 4 prescriptions in four different names for 175 pills of Oxycontin and the informant paid $5,250 for the pills with money given to him by DEA. Further purchases of oxycodone were made with fake prescriptions on March 27, 2009, and April 1, 2009. Phony prescriptions were also used by a separate DEA undercover agent to purchase Xanax, another controlled substance, on May 21, 2009 and June 5, 2009 from Mr. Patel.

Fairly early on through the course of the relationship between the informant and Mr. Patel, it became evident that Patel knew that the informant was a drug dealer. For instance, Patel once instructed the informant how to best write fake prescriptions so as to avoid any detection from DEA, the insurance companies, or any other authorities. In one tape-recorded conversation, Patel told the informant "Be aware of the script paper. We got to be aware of the script and the writing. I don't know if you could have someone else write them for you. We need to vary. We need to do it smarter and better." On another occasion, in a discussion about whether the informant could continue to obtain drugs from Patel, Patel told the informant "This is all I do. I got my whole life to lose. Yeah, but I got my whole life to lose, you know?" Patel then joked to the informant, "You could be undercover, setting me up." Patel did not know at that point, of course, that the informant was, indeed, working undercover for the DEA. A couple of months later, Patel was arrested by law enforcement.

In total, Patel sold approximately 34,000 oxycodone pills to the informant between July 2007 and March 2009 for a total cost of approximately $400,000. The total weight of the oxycodone sold to the informant was approximately 2 kilograms.

### Guidelines Stipulation

7. The parties stipulate and agree that oxycodone is converted to marijuana in the drug equivalency tables pursuant to U.S.S.G. § 2D1.1. Distributing two kilograms of oxycodone is the equivalent of distributing between 10,000 kilograms and 30,000 kilograms of marijuana, and the resulting base offense level is thirty-six (36).

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office also agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

10. This Office and the Defendant agree to dismiss Counts Two through Eighteen of the Superseding Indictment against the defendant Ketankumar Patel. This Office additionally agrees to dismiss the Superseding Indictment against Deepa Inc.

### Rule 11(c)(1)(C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment of **72 months** is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or to set any lawful conditions of supervised release pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). In addition, Patel agrees to forfeit the amount contained in the first forfeiture provision of the Superseding Indictment, namely **$400,000**, and follow this agreement's mandates covered in paragraph 12.

5

The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event that the Court rejects this agreement, pursuant to Rule 11(c)(5), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement.

### Forfeiture

12.    The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following:

$400,000

The Defendant understands and agrees that the forfeiture of the $400,000 will take the form of a money judgment for that amount. The parties also understand and agree that $50,000 in cash that was seized by the DEA in a search conducted pursuant to Mr. Patel's arrest will be forfeited and applied toward the $400,000 money judgment. In addition, the parties understand that the Defendant has other assets that were seized or restrained by the Government pursuant to the Amended Protective Order entered into in this case. The Defendant agrees that those assets will also be forfeited as substitute assets pursuant to 21 U.S.C. § 853(p), and that the value of those assets, as determined by the U.S. Marshals Service, will be applied toward the money judgment. The Defendant further agrees that to the extent that the substitute assets, plus the $50,000 in seized cash, are not sufficient to satisfy the $400,000 money judgment, the Defendant will satisfy any shortfall by writing a check to the United States Marshals Service at time of his sentencing. The Defendant further agrees to obey the provisions in the signed Consent Order of Forfeiture submitted to the Court on the date of the rearraignment.

The Defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any

such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

### Waiver of Appeal

13. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Mushtaq Gunja
Assistant United States Attorney

I have read this Agreement and Sealed Addendum and have carefully reviewed every part of them with my attorney. I understand them, and I voluntarily agree to them. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/19/10                                      _____
Date                                         Ketankumar Patel

I am Ketankumar Patel's attorney. I have carefully reviewed every part of this Agreement and Sealed Addendum with him. He advises me that he understands and accepts their terms. To my knowledge, his decision to enter into this Agreement and Sealed Addendum is an informed and voluntary one.

2/19/10                                      _____
Date                                         Nicholas Vitek, Esquire